**FILED**
6/8/2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| PETER MANJARREZ, | ) | |
| Plaintiff, | ) ) ) | |
| vs. | ) ) | Case No: 1:12-cv-01257 |
| GEORGIA-PACIFIC LLC and ILLINOIS CENTRAL RAILROAD COMPANY, | ) ) ) | Hon. Ronald Guzman |
| Defendants. | ) ) | Magistrate Judge Maria Valdez |
| GEORGIA-PACIFIC LLC, | ) ) | |
| Third-Party Plaintiff, | ) ) | |
| vs. | ) ) | JURY TRIAL DEMANDED |
| ITS TECHNOLOGIES & LOGISTICS, LLC; CANADIAN NATIONAL TRANSPORTATION LIMITED; and CANADIAN NATIONAL RAILWAY COMPANY, | ) ) ) ) ) ) | |
| Third-Party Defendants. | ) | |

### GEORGIA-PACIFIC'S THIRD-PARTY COMPLAINT

Now comes defendant Georgia-Pacific LLC, by its attorneys Scharf Banks Marmor LLC, and for its Third-Party Complaint for contribution against ITS Technologies & Logistics, LLC, for contribution against Canadian National Transportation Limited, and for contribution and breach of contract against Canadian National Railway Company, states as follows:

### PARTIES, JURISDICTION AND VENUE

1. Defendant and Third-Party Plaintiff Georgia-Pacific LLC ("Georgia-Pacific") is a Delaware limited liability company with its principal place of business in Georgia. The owner and sole member of Georgia-Pacific LLC is Georgia-Pacific Equity Holdings LLC, which is a

Delaware limited liability company with its principal place of business in Georgia. The owner and sole member of Georgia-Pacific Equity Holdings LLC is Koch Renewable Resources, Inc., a Delaware corporation with its principal place of business in Wichita, Kansas.

2.     Plaintiff Peter Manjarrez is a citizen and resident of Indiana who has sued Georgia-Pacific and a co-defendant, The Illinois Central Railroad Company ("IC") in the above-captioned lawsuit, seeking over $1 million for claimed personal injuries. A copy of Manjarrez's Amended Complaint against Georgia-Pacific and IC (Document No. 18) is attached as Exhibit 1 hereto, for reference purposes only.

3.     Third-party defendant ITS Technologies & Logistics, LLC ("ITS") is an Illinois limited liability company with its principal place of business in Tinley Park, Illinois. ITS's owner and sole member is Intermodal Acquisition, LLC, which, on information and belief, is a Delaware limited liability company with its principal place of business in New York, New York.

4.     Third-party defendant Canadian National Transportation Limited ("CNTL") is a foreign corporation with its principal place of business in Concord, Ontario, Canada. CNTL is a motor contract carrier and trucking company which does business in Illinois.

5.     Third-party defendant Canadian National Railway Company ("CNRC") is a foreign corporation with its principal place of business in Montreal, Quebec, Canada. CNRC is an international railway carrier and intermodal carrier which does business in Illinois. CNRC owns the registered U.S. trademark "CN Intermodal" (Reg. No. 2667865) and at times does business under the name "CN Intermodal."

6.     The Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1332 because the amount in controversy is greater than $75,000 and there is complete diversity of citizenship between plaintiff Manjarrez, an Indiana resident, and all defendants and

third-party defendants. The Court has supplemental jurisdiction over Georgia-Pacific's third-party contribution and indemnity claims under 28 U.S.C. 1367(a).

## STATEMENT OF FACTS

### Plaintiff Manjarrez's Complaint

7.     Manjarrez's Amended Complaint alleges that, on August 16, 2010, he worked as a spotting truck operator at an Illinois train yard, where he was injured when his truck flipped over on its side while he was operating it.  Among other things, Manjarrez claims that this accident occurred because his truck was carrying loose Georgia-Pacific cargo, which he alleges that Georgia-Pacific failed to properly secure.

8.     Georgia-Pacific has answered the Amended Complaint and denies all liability, and continues to deny all of Manjarrez's claims against it.

### The Third-Party Defendants

9.     At all relevant times, CNRC acted as Georgia-Pacific's intermodal and railway freight carrier pursuant to a November 5, 2006 Intermodal Services Agreement between Georgia-Pacific and CNRC (attached hereto as Exhibit 2).  CNRC occasionally does business using the brand name "CN Intermodal," a registered U.S. trademark of CNRC.

10.     At all relevant times, CNRC used CNTL, its corporate affiliate and agent, as a trucking carrier for some of the intermodal freight transportation services that CNRC was obligated to perform for Georgia-Pacific under the Intermodal Services Agreement.  These services included transportation of Georgia-Pacific cargo by truck.

11.     At all relevant times, Third-Party Defendant ITS was a subcontractor for defendant IC, a wholly owned lower-tier subsidiary of CNRC which owns and operates the Harvey, Illinois freight yard where this incident took place.

3

12.     At all relevant times, including on August 16, 2010, plaintiff Manjarrez was employed by ITS as a truck driver and operator.

## CNTL and CNRC's Responsibility for Manjarrez's Claimed Injuries

13.     On August 11, 2010, the Georgia-Pacific cargo at issue was loaded onto a CNTL truck in Monticello, Mississippi, where a CNTL truck driver signed for the cargo. The driver's responsibilities included, among other things, closing the door and affixing the seal of on the door of the CNTL truck carrying the load, thus verifying that the load was secure. The driver signed the Georgia-Pacific bill of lading for this cargo on behalf of "CN Intermodal." (Bill of Lading, Ex. 3.)

14.     At all relevant times, the truck driver was an employee of CNTL, which was in turn acting as an agent of CNRC under the Intermodal Services Agreement, with full authority to act on CNRC's behalf and perform CNRC's duties under the Intermodal Services Agreement.

15.     After the CNTL truck was loaded in Monticello, the driver drove it and his Georgia-Pacific cargo to a CNRC facility in Jackson, Mississippi, where CNRC loaded it onto an intermodal flatcar for transportation to Illinois via freight train. On information and belief, CNTL and/or CNRC (either directly or through its agents) were responsible at this junction for verifying that the load was or remained secure.

16.     CNRC was responsible for verifying that the aforementioned load was or remained secure during its transportation from Jackson, Mississippi to Illinois, and at all points between.

17.     By August 16, 2010, the Georgia-Pacific cargo at issue had made its way to the IC train yard in Harvey, Illinois, where, according to the allegations in Plaintiff's Amended Complaint, it was loaded onto an ITS spotting truck or "trailer" operated by Manjarrez.

18.     Manjarrez now claims, in his Amended Complaint, that the load was not properly secured before it reached the Harvey yard and that Georgia-Pacific was negligent in failing to secure the load.  To the extent Georgia-Pacific may be found liable to Manjarrez under this theory of liability (which liability Georgia-Pacific denies), the failure to secure the load resulted from the following negligent acts and omissions by CNTL and CNRC (either directly or through its agents, including but not limited to CNTL):

- Failing to verify that the cargo was secure when closing the doors and affixing the seal to the CNTL truck carrying the load from Monticello, Mississippi to Jackson, Mississippi;

- Improperly loading the cargo onto the train in Jackson, Mississippi and/or failing to secure the load as it left the facility in Jackson, Mississippi;

- Failing to verify that the cargo was secure during its transportation from Jackson, Mississippi to Harvey, Illinois, and at all points between;

- Otherwise failing to make a reasonable inspection of the cargo, act with the degree of care required of a trucking or railroad carrier, or take the proper steps to protect against shifting or failing cargo, in violation of Federal Motor Carrier Safety Regulations 49 C.F.R. §393.100 thru 393.142;

19.     To the extent Georgia-Pacific may be found liable to Manjarrez under a negligence theory of liability (which liability Georgia-Pacific denies), one or more of the foregoing negligent acts or omissions on the part of CNTL and CNRC (either directly or through its agents, including but not limited to CNTL) was the proximate cause of Manjarrez's injuries.

### ITS's Responsibility for Manjarrez's Claimed Injuries

20.     On August 16, 2011, Manjarrez and his ITS truck were involved in an accident at the Harvey train yard operated by IC.  Manjarrez made a written statement about that accident in which he said that his ITS vehicle "tipped on uneven gravel" as he was "backing" it "into a spot." (Manjarrez statement, Ex. 4.)

21.     As Manjarrez's employer, ITS was negligent in one or more of the following acts or omissions:

- Failing to properly train, support, or supervise Manjarrez while he was operating the ITS vehicle;

- Failing to properly train, support, or supervise Manjarrez regarding the proper procedure to follow when driving his ITS vehicle on or near uneven gravel;

- Failing to properly train, support, or supervise Manjarrez regarding the proper procedure to follow or to communicate with others at ITS when backing up his vehicle to or from a loading area or a train car;

- Failing to properly train, support, or supervise Manjarrez regarding the proper procedure to follow or to communicate with others at ITS when backing up his vehicle to or from a loading area or a train car;

- Failing to properly train, support, or supervise Manjarrez as to the appropriate use of loading devices to load or unload the vehicle at issue;

- Failing to provide appropriate manpower to assist Manjarrez in the loading or unloading of the vehicle;

22.     To the extent Georgia-Pacific may be found liable to Manjarrez under a negligence theory of liability (which liability Georgia-Pacific denies), one or more of the foregoing negligent acts or omissions on the part of ITS was the proximate cause of Manjarrez's injuries.

23.     Manjarrez has claimed over $255,664.29 in medical expenses in connection with the injuries he claims resulted from the accident, and has received at least $186,168.87 of that amount in workers compensation benefits from ITS.   To the best of Georgia-Pacific's knowledge, ITS has not waived its right under the Illinois Workers Compensation Act to lien a future plaintiff's verdict against Georgia-Pacific and recover these benefits payments. Accordingly, this lawsuit is ripe and there is a case and controversy between ITS and Georgia-Pacific.

## COUNT I

### (For Contribution Against ITS)

24.     Georgia-Pacific restates and realleges paragraphs 1-23 above as if fully set forth herein.

25.     In the event Georgia-Pacific is found liable to Manjarrez, Georgia-Pacific is entitled to contribution from ITS in an amount commensurate with ITS's relative degree of fault in proximately causing Manjarrez's injuries, in an amount no greater than $186,168.87 plus any additional workers compensation benefits payable to Manjarrez on his claimed $255,664.29 in medical expenses, as well as any other amounts recoverable under Illinois law.

26.     Therefore, Georgia-Pacific demands judgment against ITS for such share of sums as may be adjudged against Georgia-Pacific in Manjarrez's favor.

## COUNT II

### (For Contribution Against CNTL)

27.     Georgia-Pacific restates and realleges paragraphs 1-23 above as if fully set forth herein.

28.     In the event Georgia-Pacific is found liable to Manjarrez, Georgia-Pacific is entitled to contribution from CNTL in an amount commensurate with CNTL's relative degree of fault in proximately causing Manjarrez's injuries.

29.     Therefore, Georgia-Pacific demands judgment against CNTL for such share of sums as may be adjudged against Georgia-Pacific in Manjarrez's favor.

## COUNT III

### (For Contribution Against CNRC)

30. Georgia-Pacific restates and realleges paragraphs 1-23 above as if fully set forth herein.

31. In the event Georgia-Pacific is found liable to Manjarrez, Georgia-Pacific is entitled to contribution from CNRC in an amount commensurate with CNRC's relative degree of fault in proximately causing Manjarrez's injuries, either directly or through its agents, including but not limited to CNTL.

32. Therefore, Georgia-Pacific demands judgment against CNRC for such share of sums as may be adjudged against Georgia-Pacific in Manjarrez's favor.

**COUNT IV**

**(for Breach of Indemnity Contract Against CNRC)**

33. Georgia-Pacific restates and realleges paragraphs 1-23 above as if fully set forth herein.

34. The Intermodal Services Agreement between CNRC and Georgia-Pacific obligates CNRC to "assume and bear all risks growing out of or occurring in the performance of this contract" by either CNRC or its "agents or employees," including risks for "injury or damage" to "the property and premises of any other person" and "any death or injury to any person or persons, whether or not employed by [CNRC], however caused, occurring during the performance of the contract or upon the premises where the contract is being performed." Exhibit 2 ¶ 7(a)-(b).) The only exception is where such injury is caused by the "sole negligence" of Georgia-Pacific or its "agents" or "employees." (*Id.*)

35. CNRC also separately and independently agreed, "at its own sole cost and expense, to defend, save harmless and indemnify" Georgia-Pacific from any "suits, claims, demands, costs, attorneys fees, charges, debts, dues, liabilities and payments of money of any sort or nature

whatsoever account of injury to or the death of persons or loss or of damage to property in any manner whatsoever, arising out of or predicated upon," among other things, the "transportation and handling of goods" by CNRC or its "agents or employees," except to the extent that the claim "was caused by any act or omission" by Georgia-Pacific. (Ex. 2 ¶ 7(c).)

36.     Georgia-Pacific has tendered defense of this lawsuit to CNRC and sought indemnity from CNRC under the Intermodal Agreement for all of plaintiff Manjarrez's claims. CNRC has refused to accept this tender or indemnify Georgia-Pacific, despite its obligations to do so under the Intermodal Services Agreement and the evidence that the negligence of CNRC itself as well as one or more of its "agents" responsible for performance under the Intermodal Services Agreement – including but not limited to CNTL – caused plaintiff Manjarrez's injuries.

37.     CNRC also separately and independently agreed to "obtain at least the minimum insurance covering the risks incident to this contract including Workmen's Compensation and all other types of insurance as required by the Federal Motor Carrier Safety Administration," to be written by "reliable insurance companies." (Ex. 2  ¶¶ 7(b).) These "commitments" included CNRC's agreement to "have in effect contractual coverage insuring" its "indemnification agreements," with an insurance certificate to be "furnished" to Georgia-Pacific indicating that the coverage was in full force and effect. (Ex. 2  ¶¶ 7(c).) Contrary to its contractual obligation, CNRC provided Georgia-Pacific with an inadequate liability insurance certificate of coverage which has no provision for a self-insurance retention and which improperly lists Georgia-Pacific as an additional insured "only with respect to the liability arising out of the operation of" CNRC.

38.     CNRC's refusal to accept Georgia-Pacific's tender, indemnify Georgia-Pacific, or furnish Georgia-Pacific with an appropriate insurance certificate are all in breach of the

Intermodal Services Agreement, and have damaged Georgia-Pacific by forcing it to incur unnecessary defense costs and exposure in this lawsuit.

## PRAYER FOR RELIEF

Wherefore, Defendant and Third-Party Plaintiff Georgia-Pacific LLC prays that judgment be entered in its favor and against the following Third-Party Defendants:

1. Against ITS Technologies & Logistics, LLC, in an amount commensurate with its relative degree of fault in connection with all sums that may be adjudged against Georgia-Pacific in plaintiff's favor, in an amount not to exceed the total workers compensation benefits payable to plaintiff;

2. Against Canadian National Transportation Limited in an amount commensurate with its relative degree of fault in connection with all sums that may be adjudged against Georgia-Pacific in plaintiff's favor;

3. Against Canadian National Railway Company in an amount commensurate with its relative degree of fault in connection with all sums that may be adjudged against Georgia-Pacific in plaintiff's favor;

4. Against Canadian National Railway Company for all money damages resulting from its breaches of the Intermodal Services Agreement, including all defense costs and other exposure to Georgia-Pacific in this lawsuit; and

5. Against all Third-Party Defendants for interest, costs, and any other relief permitted by law.

## JURY TRIAL DEMAND

Georgia-Pacific demands trial by jury.

Dated:   June 5, 2012

Defendant Georgia-Pacific LLC

By its attorney:

__/s__   Eric F. Quandt

Eric F. Quandt – Atty. No. 2267519
George D. Sax – Atty. No. 6279686
Scharf Banks Marmor LLC
333 W. Wacker Drive, Suite 450
Chicago, Illinois 60606
Telephone:  (312) 726-6000
Facsimile:  (312) 726-6045

Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| PETER MANJARREZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  12-cv-1257 |
| | ) | |
| GEORGIA-PACIFIC LLC, a Georgia | ) | Judge Ronald Guzman |
| Corporation, and ILLINOIS CENTRAL | ) | |
| RAILROAD COMPANY, an Illinois | ) | Plaintiff Demands Trial by Jury |
| Corporation, | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT AT LAW

## COUNT I – NEGLIGENCE – GEORGIA PACIFIC LLC

NOW COMES the Plaintiff, PETER MANJARREZ, by and through his attorneys,

ARGIONIS & ASSOCIATES, LLC, and complaining of Defendant, GEORGIA PACIFIC LLC,

a Georgia Corporation, alleges as follows:

1.      On August 16, 2010, and for a long time prior thereto, the Defendant was and is a

foreign corporation that was and is doing business within the State of Illinois.

2.      On or around August 16, 2010, the Defendant, GEORGIA PACIFIC LLC, loaded

and shipped a container, marked EMHU 639773, containing cargo of tall and heavy loads of

paper, to the Gateway Yard located at or near 15840 West Avenue, in the City of Harvey,

County of Cook, and State of Illinois.

3.      That on August 16, 2010, Plaintiff was employed by ITS Technologies &

Logistics, LLC, as a spotting truck operator at the Gateway Yard located at or near 15840 West

Avenue, in the City of Harvey, County of Cook, and State of Illinois.

1

4.     That on August 16, 2010, and for a long time prior thereto, the Defendant, owned, possessed, operated, managed, maintained and/or controlled or had a duty to possess, operate, manage, maintain and/or control, both directly and indirectly, individually and through their agents, servants and employees, a certain shipping container, marked EMHU 639773, and/or the cargo contained therein.

5.     That at the aforementioned time and place and prior thereto, the Defendant, well knowing its duty in this regard, carelessly and negligently caused and permitted said shipping container and/or its cargo to become and remain in a dangerous condition for persons using said shipping container and/or cargo, although the Defendant knew, or in the exercise of ordinary and reasonable care should have known, of said dangerous condition.

6.     That at the aforesaid time and place, the Plaintiff was moving said shipping container with a spotting truck.

7.     That the Defendant was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

   (a)   Improperly owned, possessed, operated, managed, maintained and/or controlled the aforesaid shipping container and/or its cargo, so that as a direct and proximate result thereof, the Plaintiff was injured;

   (b)   Failed to make a reasonable inspection of the aforesaid shipping container and/or its cargo, when the Defendant knew, or should have known, that said inspection was necessary to prevent injury to the Plaintiff;

   (c)   Failed to warn the Plaintiff of the dangerous condition of the shipping container and/or its cargo, when the Defendant knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to the Plaintiff;

   (d)   Failed to take the proper steps to protect against shifting or falling cargo, in violation of Federal Motor Carrier Safety Regulations 49 C.F.R. §393.100 thru 393.142;

(e) Failed to properly load and/or secure the cargo contained in the aforesaid shipping container to prevent it from becoming unbalanced, so that as a direct and proximate result thereof, the Plaintiff was injured;

(f) Failed to properly block and/or brace the cargo contained in the aforesaid shipping container to prevent the cargo from shifting, tipping and/or sliding during shipping, so that as a direct and proximate result thereof, the Plaintiff was injured;

(g) Failed to properly distribute the cargo contained in the aforesaid shipping container to prevent an unstable load, so that as a direct and proximate result thereof, the Plaintiff was injured;

(h) Was otherwise careless and/or negligent.

8.     That on the aforementioned date and as a result of the aforesaid acts and/or omissions of the Defendant, the Plaintiff was caused to be injured when the aforesaid shipping container flipped, causing the truck cab the Plaintiff was driving in to flip as well.

9.     That as a direct and proximate result of one or more of the aforesaid careless and negligent acts and/or omissions of the Defendant, the Plaintiff then and there sustained severe and permanent injuries, both externally and internally, and was, and will be hindered and prevented from attending to his usual duties and affairs and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, PETER MANJARREZ, demands judgment against the Defendant, GEORGIA PACIFIC LLC, a Georgia Corporation, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally, costs of said suit.

3

## COUNT II – NEGLIGENCE – ILLINOIS CENTRAL RAILROAD COMPANY

NOW COMES the Plaintiff, PETER MANJARREZ, by and through his attorneys, ARGIONIS & ASSOCIATES, LLC, and complaining of Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois Corporation, alleges as follows:

1.      On August 16, 2010, and for a long time prior thereto, the Defendant was an Illinois corporation that was and is doing business within the State of Illinois.

2.      That on August 16, 2010, and for a long time prior thereto, the Defendant, owned, possessed, operated, managed, maintained and/or controlled or had a duty to possess, operate, manage, maintain and/or control, both directly and indirectly, individually and through their agents, servants and employees, a certain Gateway Yard, located at or about 15840 West Avenue, in the City of Harvey, County of Cook and State of Illinois.

3.      That at the aforementioned time and place and prior thereto, the Defendant, well knowing its duty in this regard, carelessly and negligently caused and permitted said premises to become and remain in a dangerous condition for persons using said premises, although the Defendant, knew, or in the exercise of ordinary and reasonable care should have known, of said dangerous condition.

4.      That at the aforesaid time and place, the Plaintiff was operating a spotting truck at the aforementioned premises.

5.      That the Defendant was then and there guilty of one or more of the following careless and negligent acts and/or omissions:

       (a)    Improperly owned, possessed, operated, managed, maintained and/or controlled the aforesaid premises, so that as a direct and proximate result thereof, the Plaintiff was injured;

4

    (b)    Allowed and permitted an uneven area of gravel and/or uneven surface driving area to exist in the aforementioned Gateway Yard in which truck operators drive their vehicles;

    (c)    Failed to make a reasonable inspection of the aforesaid premises and on the Gateway Yard in which truck operators drive their vehicles, when the Defendant knew, or should have known, that said inspection was necessary to prevent injury to the Plaintiff;

    (d)    Failed to warn the Plaintiff of the dangerous condition of the uneven gravel and/or uneven surface driving area in a common area in which truck operators drive their vehicles, when the Defendant knew, or in the exercise of ordinary care should have known, that said warning was necessary to prevent injury to the Plaintiff;

    (e)    Failed to safeguard the roadway near the uneven gravel and/or uneven surface driving area after being put on notice of dangerous condition so as to protect the truck operators lawfully on the premises;

    (f)    Allowed the condition of the Gateway Yard to deteriorate in condition so as to expose truck operators who are lawfully on the premises to unreasonable risk;

    (g)    Failed to take action to repair and/or fix the dangerous condition, so as to avoid exposing truck operators who are lawfully on the premises to unreasonable risk;

    (h)    Was otherwise careless and negligent.

6.    That on the aforementioned date and as a result of the aforesaid acts of the Defendant, the Plaintiff was caused to be injured when the truck and attached container flipped while driving over the uneven gravel and/or uneven surface driving area.

7.    That as a direct and proximate result of one or more of the aforesaid careless and negligent acts and/or omissions of the Defendant, the Plaintiff then and there sustained severe and permanent injuries, both externally and internally, and was, and will be hindered and prevented from attending to his usual duties and affairs and has lost, and will in the future lose, the value of that time as aforementioned. Plaintiff also suffered great pain and anguish, both in mind and body, and will in the future continue to suffer. Plaintiff further expended and became

liable for, and will expend and become liable for, large sums of money for medical care and services endeavoring to become healed and cured of said injuries.

WHEREFORE, the Plaintiff, PETER MANJARREZ, demands judgment against the Defendant, ILLINOIS CENTRAL RAILROAD COMPANY, an Illinois Corporation, in a dollar amount to satisfy the jurisdictional limitation of this Court and such additional amounts as the jury and the Court shall deem proper, and additionally, costs of said suit.

ARGIONIS & ASSOCIATES, LLC

By:   S/ Al Koritsaris
        One of its Attorneys

George Argionis (#6236638)
Al Koritsaris
Argionis & Associates, LLC
180 N. LaSalle – Suite 2105
Chicago, IL 60601
(312) 782-4545

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on April 2, 2012, he electronically filed the foregoing NOTICE OF MOTION with the Clerk of Court using the electronic filing system which will send notification to:

> Eric Quandt
> Schoeman, Updike, Kaufman and Scharf
> 333 W. Wacker – Suite 450
> Chicago, IL 60606
> Tel: 312-726-6000
> Fax: 312-726-6045
> *Attorneys for Defendant Georgia-Pacific LLC*
>
> Edward H. MacCabe, Esq.
> MacCabe & McGuire
> 77 West Wacker Drive, Suite 3333
> Chicago, Illinois 60601
> Tel: 312-357-2600
> Fax: 312-357-0317
> *Attorneys for Illinois Central Railroad Company*

_____

Exhibit 2

Canadian National Railway Company /Georgia-Pacific Intermodal Service Agreement

AGREEMENT made this 5th day of November, 2006, by and between Georgia-Pacific Corporation, a Georgia corporation, 133 Peachtree Street, N. E., Atlanta, Georgia 30303, hereinafter called "GP", and Canadian National Railway Company, 935 de La Gauchetiere Street West, Montreal, QC H3B 2M9, SCAC CNBH, an intermodal operating company hereinafter called "Canadian National Railway Company".

## WITNESSETH THAT:

WHEREAS, GP, in the usual and ordinary conduct of its business requires transportation by intermodal operating company of its products, materials, and equipment; and

WHEREAS, GP has special and distinct needs for transportation services and desires to avail itself of such intermodal operating company services; and

WHERAS, "Canadian National Railway Company" is engaged in the transportation of freight, has the necessary expertise to transport freight, and is willing and desirous of transporting contract freight tendered to it by GP;

NOW, Therefore, in consideration of the premises and the mutual covenants hereinafter contained, the parties hereto have mutually agreed as follows:

1. "Canadian National Railway Company" is an intermodal operating company and the transportation services it is providing GP herein are those of an intermodal operating company and not a common carrier. The terms of this agreement shall govern, and any use of bills of lading, or other freight documents referring to "common carriers" and/or "tariffs", shall not alter the contract relationship created hereunder between the parties.

2. Subject to the terms and conditions hereof, "Canadian National Railway Company" agrees that upon the request of GP it will transport and deliver shipments of contract freight from GP facilities or other designated locations to the various destination points shown in Appendix "A" attached hereto and made a part hereof, (hereinafter Appendix "A") and at the rate specified therein.

3. (a) GP agrees to compensate Canadian National Railway Company according to the rates, charges and rules specified in the Schedules for transportation services performed pursuant to this Agreement. Canadian National Railway Company shall invoice GP promptly following delivery of freight. Payment for properly invoiced services shall be made by GP within forty-five (30) days following GP's receipt of such invoice. Canadian National Railway Company agrees that no penalties or interest will be assessed to GP for past due amounts.

(b) "Canadian National Railway Company" shall have no lien for the retention of freight to secure payment of freight charges.

4. "Canadian National Railway Company" shall, at its cost and expense, employ in the operation of such vehicles and equipment fully qualified personnel, shall procure and maintain such licenses and permits as are required by local, state, or federal authorities with respect to such

transportation services and shall comply with such laws and regulations and upon GP's request shall provide evidence of the above.

5. (a) Subject to Paragraph 10, GP agrees to tender to "Canadian National Railway Company" for transportation under the terms of this agreement, a series of at least __1000__ shipments of freight per year totaling not less than __NA__ pounds as defined in Appendix "A" during the term of this agreement. Loads tendered to "Canadian National Railway Company", but not accepted shall count toward GP's volume commitment.

(b) In the event that GP fails to tender the said minimum number of shipments during any such period, GP agrees to pay to "Canadian National Railway Company", as liquidated damage, and not as a penalty, the sum of twenty-five dollars ($25.00) per deficit shipment.

6. In order to meet GP's distinct needs as hereinafter stated, "Canadian National Railway Company" agrees:

(a) To procure and make available in good working order, a sufficient amount of acceptable equipment on short notice, and capable and well trained crews for the purpose of fulfilling "Canadian National Railway Company's" obligations under this Agreement. "Canadian National Railway Company" covenants and agrees to transport safely and deliver undamaged all freight tendered to it by GP, without delay and in good and workmanlike manner.

(b) To immediately notify GP by telephone, teletype, or facsimile machine, at point of dispatch, of the occurrence of an accident or other delay in delivery to the consignee.

(c) Other distinct needs as may be listed in attached Addendum A and/or Appendix A.

7. "Canadian National Railway Company" agrees to assume and bear all risks growing out of or occurring in the performance of this contract by "Canadian National Railway Company", its agents or employees for:

(a) any and all injury or damage arising out of performance of this contract to (1) the property and premises of GP, (2) the property and premises of any other person, (3) any property or equipment used or to be used or incorporated in the performance of this contract, except when caused by the sole negligence of GP, its agents, and employees.

(b) any death or injury to any person or persons, whether or not employed by the "Canadian National Railway Company", however caused, occurring during the performance of the contract or upon the premises where the contract is being performed, except when caused by the sole negligence of GP, its agents and employees. "Canadian National Railway Company" agrees to obtain at least the minimum insurance covering the risks incident to this contract including Workmen's Compensation and all other types of insurance as required by the Federal Motor Carrier Safety Administration. All insurance policies are to be written by reliable insurance companies. Insurance certificates, (comprehensive form) shall be filed with GP before commencement of work. Policies shall comply with all applicable federal and state laws relating to wages, hours, and conditions of labor.

(c) "Canadian National Railway Company" further covenants and agrees, and it hereby binds itself, at its own sole cost and expense, to defend, save harmless and indemnify GP from and

against any and all manner of suits, claims, demands, costs, attorneys' fees, charges, debts, dues, liabilities, and payments of money of any sort or nature whatsoever account of injury to or the death of persons or loss of or damage to property in any manner whatsoever, arising out of or predicated upon the 1) negligent operation of equipment by "Canadian National Railway Company", 2) the conduct of the business of "Canadian National Railway Company", or 3) the transportation and handling of goods by "Canadian National Railway Company", its agents or employees whether pursuant to this Agreement or otherwise provided that this hold harmless and indemnity shall not apply to the extent that the action giving rise to the claim was caused by any act or omission by GP. In addition to the other insurance commitments agreed to herein, "Canadian National Railway Company" agrees to have in effect contractual coverage insuring the indemnification commitments agreed to in this Agreement and the insurance certificate furnished pursuant to paragraph 7(b) above shall indicate that said coverage is in full force and effect.

8. (a) Canadian National Railway Company hereby covenants and agrees to be fully responsible for and to indemnify and save harmless GP on account of loss of or damage to any and all freight transported for GP by Canadian National Railway Company under the terms of this Agreement pursuant to the terms of the Carmack Amendment, 49 U.S.C. §14706, or any similar successor statute, as if that statute were fully applicable as a matter of law to all of the transportation provided by Canadian National Railway Company for GP. GP shall have nine (9) months from the date of actual delivery of the freight or, in the case of lost freight, from the date delivery had been scheduled, to file a claim with Canadian National Railway Company in respect of the lost or damaged freight. The procedures for handling loss and damage claims shall be as set forth in 49 CFR § 1005 and related sections. GP shall have two (2) years from the date any claim for lost or damaged freight is declined by Canadian National Railway Company in whole or in part to institute a legal action in an appropriate court of law with respect to its claim. Canadian National Railway Company may not limit or waive its liability to GP for lost or damaged cargo in any respect except by means of an express written agreement signed by both parties hereto.

9. "Canadian National Railway Company" will obtain all federal and state licenses, permits and authority required by virtue of the activities carried on by it hereunder and that it has and will comply with all applicable federal, state and local laws and ordinances and all applicable federal, state or other regulatory body having jurisdiction in the premises and with any and all applicable amendments to such laws and rules and regulations, now or hereafter enacted or promulgated. Compliance, or failure to comply, with all such laws, rules and regulations shall not, however, relieve "Canadian National Railway Company" of any of its obligations to GP under the terms of this Agreement.

10. Performance of this Agreement by either GP or "Canadian National Railway Company" is subject to delay or failure caused by force majeure events including but not limited to existing or future strikes, lock-outs, or other labor disturbances, war insurrection, riot, acts of terrorism, shortage of raw materials, accident or disaster, embargo, fire, flood, storm or other Acts of God.

11. It is expressly understood and agreed that the business of "Canadian National Railway Company", its agents, servants is in all respects separate and distinct from GP, and that "Canadian National Railway Company", and its agents, servants and employees, are with respect to GP, independent contractor(s). The "Canadian National Railway Company" agrees to be responsible for, bound by, and indemnify and save harmless GP from and against all acts or omissions of its agents and employees.

12. This Agreement may not be assigned by either party without the prior written consent of the other party, which shall not be reasonably withheld. The above limitation on assignment shall not apply to subcontracting by "Canadian National Railway Company", who may subcontract the service it has agreed to provide to its owned or controlled affiliates. Further, "Canadian National Railway Company" may also make trip lease arrangements. In either instance GP will be contractually obligated to "Canadian National Railway Company" only and "Canadian National Railway Company" will be responsible to the other parties. "Canadian National Railway Company" will not co-broker any of GP's shipments.

13. This Agreement is for one (1) year period from the date hereof and will be extended without action of either party. Cancellation may be accomplished after the original one year period by one party giving to the other party not less than thirty (30) days prior written notice. During the period of this Agreement and for three years following, "Canadian National Railway Company" shall keep a copy of this Agreement on file.

14. This Agreement supersedes and cancels any and all agreements heretofore made between the parties hereto with respect to the subject matter hereof.

15. All notices, requests, demands, and other communications required by or necessary to this Agreement shall be given in writing. Such notices shall be deemed to have been given when delivered in person or deposited in the United States Mail, and addressed to the appropriate party at its respective mailing address set forth below:

(a)  Georgia-Pacific Corporation  
     133 Peachtree Street, N.E.          Attn:  Group Manager, Motor Carrier  
     P.O. Box 105605                         Packaging Division  
     Atlanta, GA 30348-5605

(b)  Georgia-Pacific Corporation        Attn:  Pricing Manager  
     1919 S Broadway                        Consumer Products  
     PO Box 19130  
     Green Bay, WI 54307-9130

(c)  Georgia-Pacific Corporation        Attn:  Group Manager, Motor Carrier  
     55 Park Place                           Building Materials Division  
     Atlanta, GA 30303

16. In the event that any phrase, clause sentence, or other provision contained in this Agreement shall violate any applicable statute, ordinance, rule or law, such phrase, clause, sentence or provision shall be ineffective to the extent of such violations without invalidating and other provision of this Agreement. The provisions of this AGREEMENT shall survive cancellation, termination, or expiration of this AGREEMENT.

17. Neither party shall disclose the terms of this Agreement to a third party without the written consent of the other party except (a) as required by law or regulations; (b) when disclosure is made to its parent, subsidiary transportation charges by an authorized agent.

18. The standard shipping document shall be a Bill of Lading as executed for the relevant shipment. The terms of said Bill of Lading are included in and made a part of this contract provided, however, in the event of a conflict between the terms of the Bill of Lading and the terms of this Agreement, this Agreement shall prevail.

IN·WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed in duplicate, each one being an original, by their duly authorized representatives on the day and year first written above.

CARRIER

BY:

_____
Witness for Carrier
J· WAHBA

Date _NOV 7, 2006_

_____
Signature

Title _CORRIDOR MGR_

_CN INTERMODAL_

SHIPPER

BY: Georgia-Pacific
Corporation

_____
Witness for Shipper
CRAIG NORTCH
Date _November 7, 2006_

_____
Signature _Tim O'Brien_

Title _Mgr. Trans. Pricing_

# APPENDIX "A"

Containing rates and charges as described in the Intermodal Service Agreement between Canadian National Railway Company and Georgia-Pacific Corporation.

Rates and charges governing the service rendered under this contract are specifically stated below, or as otherwise specified in GP-4, any supplements thereto and subsequent issues thereof.

Linda Mancini

Marsh Canada Limited
1981 McGill College Avenue
Suite 820
Montréal, QC  H3A 3T4
514-285-5906  Fax  514-285-2040
linda.mancini@marsh.com
www.marsh.com

# MARSH



MARSH  MERCER  KROLL
GUY CARPENTER   OLIVER WYMAN

December 03, 2009

Georgia Pacific LLC
John  Vasta
1919 South Broadway
P.O. Box 19130
Green Bay  WI   54304

Subject:
**Certificate of Insurance No.L-2009-288**
**Canadian National Railway Company**

As requested, please find enclosed the referenced certificate of insurance evidencing coverage that
is currently in place for the captioned Insured.

We trust all will be found in order, however, should you have any questions, please do not hesitate
to contact our office.

Yours truly,

Linda  Mancini

Copy:
Jonathan  Wahba - Canadian National Railway Company
Yves  Drouin - Canadian National Railway Company
Jessie  Caldwell - Georgia Pacific LLC

 
No.   **L-2009-288**                    Dated:   **December 02, 2009**

This document supersedes any certificate previously issued under this number

This is to certify that the Policy(ies) of insurance listed below ("Policy" or "Policies") have been issued to the Named Insured identified below for the policy period(s) indicated. This certificate is issued as a matter of information only and confers no rights upon the Certificate Holder named below other than those provided by the Policy(ies).

Notwithstanding any requirement, term or condition of any contract or any other document with respect to which this certificate may be issued or may pertain, the insurance afforded by the Policy(ies) is subject to all the terms, conditions and exclusions of such Policy(ies). This certificate does not amend, extend or alter the coverage afforded by the Policy(ies). Limits shown are intended to address contractual obligations of the Named Insured.

Limits may have been reduced since Policy effective date(s) as a result of a claim or claims.

| Certificate Holder: | Named Insured and Address: |
|---|---|
| Georgia Pacific LLC<br>1919 South Broadway<br>P.O. Box 19130<br>Green Bay, WI 54304<br><br>Attn.: John Vasta | Canadian National Railway Company<br>935 de la Gauchetière West, 16th Floor<br>Montreal, QC H3B 2M9<br><br>Yves Drouin |

| Type(s) of Insurance | Insurer(s) | Policy Number(s) | Effective/ Expiry Dates | Sums Insured Or Limits of Liability | |
|---|---|---|---|---|---|
| EXCESS LIABILITY | Lloyd's Underwriters<br>Gerling-Konzern Allgemeine<br>Versicherungs | N05QA15160 /<br>N05QA15170 | Nov 30, 2009 to<br>Nov 30, 2010 | Each Loss and in the Annual<br>Aggregate in Excess of | USD 50,000,000 |
| | | | | Self-Insured Retention (US$<br>for US operations / C$ for<br>Canadian operations) | $ 25,000,000 |

**Additional information:**
Georgia Pacific LLC is added as additional insured, but only with respect to the liability arising out of the operations of the Named Insured.

**Notice of cancellation:**
Should any of the policies described herein be cancelled before the expiration date thereof, the insurer(s) affording coverage will endeavour to mail 30 days written notice to the certificate holder named herein, but failure to mail such notice shall impose no obligation or liability of any kind upon the insurer(s) affording coverage, their agents or representatives, or the issuer of this certificate.

| **Marsh Canada Limited**<br>1981 McGill College Avenue<br>Suite 820<br>Montréal, QC H3A 3T4<br>Telephone: 514-285-5906<br>Fax: 514-285-2040<br>linda.mancini@marsh.com | Marsh Canada Limited<br><br>By:<br><br>Linda Mancini |
|---|---|

Exhibit 3

# Georgia-Pacific

## STRAIGHT BILL OF LADING - SHORT FORM
## ORIGINAL - NOT NEGOTIABLE

The property described herein has been received by Carrier in apparent good order, except as noted herein, and is marked, consigned and destined as indicated herein. Carrier agrees to carry the property to destination, if on its route, otherwise to deliver to another carrier on the route to said destination. Each carrier of, and any party at any time interested in, all or any of said property over all or any portion of said route to destination agrees to perform every service required hereby in accordance with the applicable contract(s), if any, between Georgia-Pacific and Carrier, and otherwise subject to the terms and conditions of the Uniform Domestic Straight Bill of Lading set forth (1) if this is a rail or rail-water shipment, in the Uniform Freight Classification, and (2) if this is a motor carrier shipment, in the National Motor Freight Classification.

| DATE | TIME | PAGE |
|------|------|------|
| 8/11/2010 | 3:45:48PM | 1 |

| BILL OF LADING NO. | CARRIER PRO NO. |
|---|---|
| 456576 | CNBH |

CONSIGNOR

# Georgia - Pacific Monticello LLC

AT  604 N.A. Sandifer Road, Monticello, MS  39654

CONSIGNEE  GEORGIA-PACIFIC CORRUGATED LLC

ADDRESS  440 EAST 138TH STREET

ADDRESS LINE 2

| CITY | STATE | ZIP |
|------|-------|-----|
| RIVERDALE | IL | 60827 |

ROUTE

| CARRIER | CN INTERMODAL |
|---|---|

| FREIGHT TERMS | RATE AUTHORITY |
|---|---|
| PREPAID | |

| PHONE NO. |
|---|
| 7739954900 |

| CRA OATE | APPT. TIME |
|---|---|

| NOTIFY PARTY |
|---|
| MIKE MERIGOLD |

| G-P NO. | CUSTOMER P.O. NO. |
|---|---|
| 611315 | CH558531 |

### VEHICLE NO. 1  —  VEHICLE NO. 2

| CARRIER/TRUCK NO. | SEAL NO(S). | CARRIER/TRUCK NO. | SEAL NO(S). |
|---|---|---|---|
| EMHU639773 | 544563 | | LB-RT |

| QUANTITY | PRODUCT DESCRIPTION | STCC/NMFC | WEIGHT |
|---|---|---|---|
| 5 | PULPBOARD OR FIBERBOARD | 2631117 | 36,658 |
| | LOAD #    456576 | | |

### SPECIAL INSTRUCTIONS

PLEASE FAX TALLIES TO CHICAGO FOR TRUCK SHIPMENTS 773-995-9304
TRUCKS WEB SCHEDULING ONLY
CAN ACCEPT HIGH CUBE CARS - T-LOADING OK
DELIVERY HRS ARE 5:00AM - NOON

| SHIPPER  Georgia-Pacific Corporation | CARRIER  CN INTERMODAL |
|---|---|
| SIGNATURE  _LB_ | SIGNATURE  _Franks L. H._ |

## SHIPPER LOAD AND COUNT

DATE  8-11-10

All transportation provided hereunder is subject to the terms of section 7 of the respective bills of lading identified above as if Georgia-Pacific initialed the Section 7 provision on the face of that Bill of Lading with respect to each shipment described herein.
Georgia-Pacific Corporation
(Signature of Consignor)

Bill 3rd Party
Freight Charges
Georgia-Pacific CPG Freight
C/O Affiliated Computer Services (ACS)
PO Box 981957
El Paso, TX 79998-1957

Exhibit 4

I was clearing Gateway 2 of Inbound and was parking a 53' EMHU. As I was backing the trailer into a spot the trailer tipped on uneven gravel and the container went all the way to the ground. The truck went into the air and then crashed down on the left side.

Roby Moniger