IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **PETER MANJARREZ,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **GEORGIA-PACIFIC LLC and** | ) | |
| **ILLINOIS CENTRAL RAILROAD** | ) | |
| **COMPANY,** | ) | No. 12 C 1257 |
| | ) | |
| Defendants, | ) | |
| | ) | Judge Ronald A. Guzman |
| | ) | |
| | ) | |
| **GEORGIA-PACIFIC LLC,** | ) | |
| | ) | |
| Third-Party Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **ITS TECHNOLOGIES &** | ) | |
| **LOGISTICS, LLC; CANADIAN** | ) | |
| **NATIONAL TRANSPORTATION** | ) | |
| **LIMITED; and CANADIAN** | ) | |
| **NATIONAL RAILWAY** | ) | |
| **COMPANY,** | ) | |
| | ) | |
| Third-Party Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Third-party defendant Canadian National Railway Company ("CNRC") moves to dismiss Georgia-Pacific LLC's ("GP") third-party complaint for insufficient service of process pursuant to Federal Rule of Civil Procedure 12(b)(5). CNRC argues that the service was ineffective because the papers were left at the front desk of the building owned by its subsidiary company

and not with a person authorized to receive service of process. For the reasons set forth below, the motion to dismiss is denied; however, the Court quashes service. GP has until October 6, 2012 to attempt to properly serve CNRC.

**I.      Background**

On August 16, 2010, Peter Manjarrez, a truck driver for ITS Technologies & Logistics, was in an accident at Illinois Central Railway ("ICR")'s Harvey yard involving a truck carrying GP cargo. (GP's Opp'n CNRC's Mot. Dismiss, Dkt # 52, at 5.) The plaintiff sued GP and ICR, claiming that their alleged negligence caused his accident. (*Id.*) After initial discovery, GP determined that CNRC, ICR's parent company, was potentially liable to it for contribution, and filed a third-party complaint against it on June 8, 2012. (Third-Party Compl., Dkt # 32.) GP also sued CNRC for breach of its contractual obligations to indemnify GP in case of an accident and provide it with adequate liability insurance coverage. (GP's Opp'n CNRC's Mot. Dismiss, Dkt # 52, at 5.)

GP could not locate a registered agent authorized to accept service of process for CNRC in the United States. (*Id.*) In fact, CNRC does not maintain an agent for service of process in Illinois. (CNRC's Mot. Dismiss, Dkt # 50, at 6.) Thus, on June 22, 2012, GP sent a process server to a building owned by ICR, CNRC's indirect subsidiary, located in Homewood, Illinois, to serve summons and complaint upon James Vena ("Vena"), CNRC's Senior Vice President for the Southern Region, who occupies an office inside the building. (CNRC's Mot. Dismiss, Dkt # 50, at 2.) Upon arrival, the process server advised Sarah Johnson ("Johnson"), an ICR employee working at the front desk, that she had some papers to serve. (*Id.*) Johnson called ICR's legal department and Thomas Healey, one of ICR's in-house attorneys, came down to the reception

2

area. (*Id.*) The process server advised Healey that she had copies of a summons and complaint that were directed to Vena. (*Id.*) Upon reviewing the papers, Healey advised the process server that he worked for ICR and that he was not authorized to accept service on behalf of CNRC. (*Id.*) The process server asked Healey if Vena had an office in the building. (*Id.*) Healey advised the process server that while Vena had an office in the building, he was not there at the time and Healey did not know when he would be returning. (*Id.* at 3.) When the process server asked Healey if he would accept service on Vena's behalf, Healey stated that he was not authorized to do so. (*Id.*) The process server then left the building, taking the papers with her. (*Id.*)

One to two hours after the process server left, she returned, again advising Johnson that she had papers to serve. (*Id.*) Johnson called ICR's legal department once again, and shortly thereafter, Linda Coyle, litigation counsel for ICR, came down to the reception area. (*Id.*) The process server advised Coyle that she was there to serve a summons and complaint. (*Id.*) Upon reviewing the complaint, Coyle advised the process server that she was employed by ICR and was not authorized to accept service of process on behalf of CNRC. (*Id.*). She further indicated that no one in the building was authorized to accept service of process on behalf of CNRC. (*Id.*)

Sometime after Coyle's conversation with the process server, the process server approached the front desk and once again asked Johnson if she could leave the papers with her. (*Id.* at 4.) Johnson advised the process server that she was not authorized to accept service of process under any circumstances. (*Id.*) Thereafter, the process server, without Johnson's consent, placed the papers on the front desk and left. (*Id.*) On the top of the papers was a post-it note directing the papers to Healey. (*Id.*)

3

The return of service executed and filed by GP states that the summons was left with Coyle and contains the following comments from the process server:

> I spoke to Linda Coyle, in house attorney for Illinois Central, and she said that she could not accept the paperwork unless it was for Illinois Central. I advised her I was leaving the paperwork here as Jim Vena has an office here and left the paperwork at the receptionist's desk.

(CNRC's Mot. Dismiss, Dkt # 50, Ex. 4.)

On July 9, 2012, the same process server arrived at the reception area of ICR headquarters for the third time and attempted to see Vena. (CNRC's Reply, Dkt # 54, at 2.) Johnson called the legal department and another ICR attorney, John Furlan, came down to the lobby and told the process server that he did not think Vena was in his office. (*Id.*) The process server then asked Furlan if Vena was out of town on vacation, and he told her that he did not know. (*Id.*) Furlan gave the process server his business card and told her that he would be happy to speak with whomever had hired her if that individual had any questions. (*Id.*). The process server then left the building, taking the papers with her. (*Id.*)

Healey, Coyle, Furlan and Johnson are ICR employees and have no direct employment or agency relationship with ICR's Canadian parent company, CNRC. (*Id.* at 5.) CNRC indirectly owns 100% of ICR's common stocks: it owns all the common stock of Grand Trunk Corporation, a Delaware corporation, which in turn owns all of the common stock of Illinois Central Corporation, which owns all of the common stock of ICR, an Illinois railroad. (*Id.*) ICR was acquired by CNRC in a 1999 merger. (GP's Opp'n CNRC's Mot. Dismiss, Dkt # 52, at 3-4.) According to CNRC's annual report, ICR's financial statements are consolidated with those of CNRC. (*Id.*)

**II.**     **Discussion**

A.     <u>Legal Standard</u>

Pursuant to Federal Rule of Civil Procedure 4(h)(1), a domestic or foreign corporation must be served following state law for serving a summons or "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1). In Illinois, "a private corporation may be served by (1) leaving a copy of the process with its registered agent or any officer or agent found anywhere within the state; or (2) in any other manner . . . permitted by law." 735 Ill. Comp. Stat. 5/2-204 (2012).

"Once a defendant has challenged the sufficiency of service of process with a motion to dismiss under Rule 12(b)(5), the burden is upon the plaintiff to make a prima facie showing that there was proper service." *Iosello v. Lexington Law Firm*, No. 03 C 987, 2003 WL 21920237, at *2 (N.D. Ill. Aug. 7, 2003). "In determining whether summons was personally served, the court may consider affidavits, other documentary evidence, depositions, and oral testimony." *Dumas v. Decker*, No. 10 C 7684, 2012 WL 1755674, at *2 (N.D. Ill. May 16, 2012).

B.     <u>Was there proper service of process</u>?

CNRC argues that service was improper, among other reasons, because the papers were not left with a person authorized to receive service of process. As already noted, under Illinois law, service may be made on a private corporation by "leaving a copy of the process with its registered agent or any officer or agent of the corporation found anywhere in the State." 735 Ill. Comp. Stat. 5/2-204.

Service on a corporation's registered agent is valid provided the agent possesses actual

authority to accept service. *See United States v. Norden Enters., LLC*, No. 01 C 8968, 2002 WL 1632633, at *2 (N.D. Ill. July 22, 2002) ("[T]he district courts in this circuit have read Rule 4(h)(1) [as] requiring that an agent have actual authority to receive service of process for that service to be valid.") (citations omitted); *Dei v. Tumara Food Mart, Inc.*, 941 N.E.2d 920, 925 (Ill. App. Ct. 2010) ("For service of process on a corporation to be effectively made upon an agent of defendant, such agent must have actual authority to accept service on behalf of the corporation.") (citations omitted).

GP contends that service on Johnson, the receptionist, was proper. *See, e.g., Union Asbestos & Rubber Co. v. Evans Prods. Co.*, 328 F.2d 949, 952-53 (7th Cir. 1964) (service on secretary of sales manager proper where manager out of the office much of the time an notice was immediately communicated to defendant at its home office). But GP's citation to *Union Asbestos* is inapposite because the *Union Pacific* court did not address and the defendant did not challenge the secretary's actual authority to accept service.

Here, however, CNRC claims that Johnson, an ICR employee, lacked actual authority to accept service on its behalf because she was not employed by CNRC, CNRC provides her with no direction in her work, has no control or authority over her work, and has no power to discharge her. (Johnson Aff., Dkt. # 49-1, ¶ 3.) In addition, CNRC did not hire her, does not pay her and Johnson does not report to any CNRC employees. (*Id*.) Indeed, Johnson states in her affidavit that she told the process server that she did not have authority to accept service on behalf of CNRC, but the process server left the papers at her desk anyway. GP does not dispute Johnson's affidavit with respect to these statements. Nor has GP pointed to any evidence that Johnson understood the import of the documents that were served. *Island Terrace v. Keystone*

*Serv. Co.*, 341 N.E.2d 41, 44 (Ill. App. Ct. 1975) (finding improper service on receptionist who did not understand or recognize the legal import of service of process and who did not deliver service papers to any officer of the corporation).

### III.     Conclusion

Accordingly, because it is undisputed that Johnson did not have actual authority to accept service on behalf of CNRC, the Court finds service was improper.  Dismissal, however, is unwarranted at this time.  "Service generally will be quashed and the action preserved in those cases in which there is a reasonable prospect that plaintiff ultimately will be able to serve defendant properly."  *Chatman v. Condell Med. Ctr.*, 99 C 5603, 2002 WL 737051, at *2 (N.D. Ill. Apr. 22, 2002) (citing 5A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 1354 (2d ed. 1990)); *Hill v. Sands,* 403 F. Supp. 1368, 1370 (N.D. Ill. 1975) ("[I]f service of process is insufficient but a reasonable prospect exists that the plaintiff could properly serve the defendant, the court quashes service but retains the case.").  According to Rule 4(m), GP has 120 days from the date the third-party complaint was filed to effect service, or until October 6, 2012.  Thus, while the motion to dismiss [49-1] is denied, the Court concludes that service on CNRC shall be quashed.

**Date**: September 12, 2012                                      _____
                                                                                       **Ronald A. Guzman**
                                                                                       **United States District Judge**